# In the United States District Court
# for the Southern District of Georgia
# Savannah Division

| | | |
|---|---|---|
| WILLIAM A. ANDERSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 414-278 |
| | * | |
| AIG LIFE AND RETIREMENT, | * | |
| | * | |
| Defendant. | * | |

## ORDER

This matter comes before the Court on a fully-briefed Motion to Dismiss, or, in the alternative, a Motion to Stay and Compel Arbitration filed by Defendant AIG Life and Retirement ("Defendant" or "AIG"). See Dkt Nos. 12, 13, 20, 28. For the reasons set forth below, Defendant's Motion to Dismiss, dkt. no. 12, is **GRANTED** in part and otherwise **DENIED AS MOOT**.

## Background

Plaintiff William A. Anderson began employment with AIG sometime around July, 2003. See Dkt. No. 20 at 1; dkt. no. 13-3 at 2. On December 19, 2014, Anderson filed a Complaint against his employer AIG alleging discrimination and retaliation in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 ("Title VII"), and the

Americans with Disabilities Act of 1990, 42 U.S.C. § 12117(a) ("ADA"). Dkt. No. 1 at 2. The Complaint contains allegations of events taking place as early as March 2012. Id. at 3.

AIG filed a Motion to Dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), or, in the alternative, to Stay and Compel Arbitration. Dkt. No. 12. To support its motion, AIG points to an alternative dispute resolution plan entitled "American General Employee Dispute Resolution Plan" ("EDR plan") contained in a Sales Employee Employment Agreement ("2003 Agreement"), dkt. no. 13-1 at 8, which "sales employees such as Mr. Anderson would have signed," Declaration of Michael Herman ("Herman Decl."), dkt. no. 13 ¶ 4. That provisions states, in pertinent part:

> **Alternative Dispute Resolution Plan.** The sales employee agrees that the American General Employee Dispute Resolution Plan, as it may be amended from time to time, is the exclusive means for resolving employment-related legal claims with the Company. American General Life and Accident Insurance Company has adopted a Dispute Resolution Plan in accordance with the Federal Arbitration Act. The Dispute Resolution Plan covers any matter relating to the relationship between the Employee and the Company, including all claims or disputes arising out of the interpretation or enforcement of any duties, rights, or obligations of the parties set forth in this Agreement, all claims amounting to common law tort or pursuant to public policy, and all claims under any federal, state, or local human rights or employment rights statute or wage and hour statute, including, [Title VII, the ADA, and Section 1981, among others,] and any similar state statute or any state retaliatory discharge statute, whether the basis for the dispute arises at the time of application for employment, as a

> result of termination of employment or as a
> consequence of the company's attempt to enforce a
> provision of this Agreement after termination of
> employment.

Dkt. No. 13-1 at 8. The subsequent paragraph carves out certain claims from the EDR plan, including workers compensation, unemployment compensation, and certain ERISA claims. Id. at 8-9. It also states that AIG "in its sole discretion, may amend or terminate the [EDR plan] at any time," id. at 9, and that notice of amendments or modifications would be provided by AIG in writing, id. at 8. Finally, in exchange for the parties' mutual agreement to submit all covered disputes to arbitration, the parties "each expressly waive any right either may have to seek redress in any court." Id. at 9.

The 2003 Agreement filed by AIG in support of its motion, dkt. no. 13-1, is not signed by either AIG or Anderson. AIG has additionally submitted a copy of "Applicant's Understandings and Authorizations," signed by Anderson on July 14, 2003, which contains the following provision regarding the EDR plan:

> Certain [AIG] Companies have adopted Employee Dispute
> Resolution ("EDR") programs, which include both
> informal and formal means, including binding
> arbitration, as the sole method of resolving most
> employment-related disputes. Seeking or accepting
> employment with [AIG], means that I agree to resolve
> employment-related claims against the company or
> another employee through this process instead of
> through the courts. **No right of court action exists.**
> Likewise, the company agrees to resolve these types of
> disputes it may have with me through the same EDR
> program rather than through court action. I am still

>free to consult or file a complaint with any
>governmental agency, such as the EEOC, regarding my
>legally protected rights. However, if I am not
>satisfied with the results of the government agency
>process, this program must be used instead of the
>court system. The details of the applicable EDR
>program, including any limitations or exclusions are
>furnished to each employee and are available to
>applicants upon request. **I agree that if I either
>apply for or accept employment with American General
>Life and Accident Insurance Company, all covered
>claims and disputes that arise either as part of the
>hiring process or during employment, if I am hired,
>will be subject to the terms of the applicable EDR
>program.**

Dkt. No. 13-3 at 2 (emphasis in original). The EDR plan in effect at this time, dkt. no. 13-2, provides that "[a]pplication for employment, employment or continued employment . . . constitutes consent by both the Employee and [AIG] to be bound by this Plan." Id. at 5. The EDR plan itself is not signed by Anderson or AIG. Id. at 6. On July 28, 2003, Anderson executed a document entitled, "Employee Acknowledgement Concerning [AIG EDR] Program." Dkt. No. 13-4. Therein, Anderson acknowledged that he is "required to adhere to the [EDR] Program" and that he understands his "employment or continued employment with [AIG] constitutes [his] acceptance of the terms of this provision as a condition of [his] employment or continued employment." Id.

AIG's 2003 Agreement was revised in August 2008 and signed by Anderson and an AIG General Manager on September 23, 2008 ("2008 Agreement"). Dkt. No. 13-5 at 12; Affidavit of William Anderson ("Anderson Aff."), Dkt. No. 20-1 ¶ 4. It contains a

4

similar EDR plan provision, which incorporates documents that comprise the EDR Program, see dkt. no. 13 ¶¶ 9-10, the receipt of which Anderson acknowledged. Dkt. No. 13-5 at 11-12 ("The Sales Employee acknowledges receipt of the documents that comprise the [EDR plan] which are incorporated herein by reference."). The 2008 Agreement is largely identical to the 2003 Agreement. The notice provision was updated to reflect that AIG is required to provide "30 days['] notice to current employees" in the event of an amendment or termination of the EDR plan. Id. at 12.

**DISCUSSION**

"The Federal Arbitration Act ("FAA") generally governs the validity of an arbitration agreement." Walthour v. Chipio Windshield Repair, LLC, 745 F.3d 1326, 1329 (11th Cir.), cert. denied, 134 S. Ct. 2886 (2014). "The FAA was 'enacted in 1925 as a response to judicial hostility to arbitration.'" Id. (quoting CompuCredit Corp. v. Greenwood, 565 U.S. --, --, 132 S.Ct. 665, 668 (2012)). "The FAA thus 'embodies a liberal federal policy favoring arbitration agreements' and seeks 'to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation.'" Id. (quoting Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005)). Consistent with the text of the FAA, "courts must 'rigorously

enforce' arbitration agreements according to their terms." Am. Exp. Co. v. Italian Colors Rest., -- U.S. --, --, 133 S. Ct. 2304, 2309 (2013) (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221 (1985)).

The FAA's primary substantive provision provides that a written agreement to arbitrate a controversy arising out of that contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see also Pendergast v. Sprint Nextel Corp., 691 F.3d 1224, 1231 (11th Cir. 2012) (explaining that arbitration agreements are on "equal footing with other contracts"). "[A] court can decline to enforce an arbitration agreement under the FAA only if the plaintiff[] can point to a generally applicable principle of *contract* law under which the agreement could be revoked." Caley, 428 F.3d at 1371. State law, here Georgia law, generally governs whether an enforceable contract exists; however, the FAA preempts state law to the extent it treats arbitration agreements differently than other contracts. Id. at 1367.

It is clear from the face of the Agreements, both separately and together with the accompanying documents, that the parties' dispute is covered by the arbitration provision. Both the 2003 and 2008 Agreements are broad in that they cover all disputes "regarding legally protected rights," except those

6

AO 72A
(Rev. 8/82)

involving workers compensation, unemployment compensation and certain ERISA benefit claims, and both Agreements expressly mention the claims brought by Plaintiff, i.e. Section 1981, Title VII, and the ADA claims. Dkt. Nos. 13-1 at 8, 13-5 at 11-12. Even though the 2003 Agreement is not signed, the 2008 Agreement is signed by both parties. Dkt. Nos. 13-1 at 9, 13-5 at 12. Plaintiff does not dispute that both he and AIG executed this document, nor does he dispute that he received the EDR PLAN documents. Thus, the Court must compel arbitration unless Plaintiff can "point to a generally applicable principle of contract law under which the agreement could be revoked." Caley, 428 F.3d at 1371.

1. Significance of Lack of Signatures and/or Initials

Plaintiff argues arbitration cannot be compelled because not all key documents were signed and/or initialed by the parties. Despite Plaintiff *and* AIG's signature on the 2008 Agreement, Plaintiff argues the lack of signature and/or initials on the 2003 Agreement and other EDR plan documents makes them unenforceable. Dkt. No. 20 at 1-2, 4. Plaintiff cites to O.C.G.A. § 9-9-2(c), which provides, in part:

> [Part 1 of Georgia Arbitration Code] shall apply to all disputes in which the parties thereto have agreed in writing to arbitration and shall provide the exclusive means by which agreements to arbitrate disputes can be enforced, except the following, to which this part shall not apply . . .

AO 72A
(Rev. 8/82)

> (9) Any contract relating to terms and
> conditions of employment unless the clause agreeing to
> arbitrate is initialed by all signatories at the time
> of the execution of the agreement[.]

§ 9-9-2(c)(9). The parties do not dispute that the arbitration provision contained in the 2003 Agreement and the 2008 Agreement is not initialed by the parties as contemplated by § 9-9-2(c)(9). According to the statute, then, the Georgia Arbitration Code does not apply to those Agreements. That does not mean, however, that, the Agreements are unenforceable, as Plaintiff suggests. Rather, the Agreements are governed by the FAA, as contemplated by the Agreements and/or the EDR plans themselves. See 2003 Agreement, Dkt. No. 13-1 at 8 (noting that the EDR Plan "is the exclusive means for resolving employment-related claims . . . in accordance with the Federal Arbitration Act"); EDR Program in effect September 2008, dkt. no. 13-6 ¶¶ 2, 7.A. (stating that the "Act" shall apply to the EDR Program and defining "Act" as the "Federal Arbitration Act"). As courts across the country, including Georgia, have recognized, the FAA preempts state law when the law undermines the FAA's objective of enforcing arbitration agreements according to their terms. See Harrison v. Eberhardt, 651 S.E.2d 826, 828 (Ga. Ct. App. 2007) ("When an agreement expressly provides for the

FAA to govern, the FAA preempts Georgia's requirement that the parties initial the provision."); see also Am. Gen. Fin. Servs. v. Jape, 732 S.E.2d 746, 748 (Ga. 2012). Plaintiff's argument that the arbitration provisions are unenforceable because they are not initialed by the parties is preempted by the FAA.

2. Continued Employment as Consideration

Plaintiff argues that though "[t]he documents submitted by AIG present several offers to [Plaintiff] and it is uncontested that Mr. Anderson accepted employment and continued employment with AIG," because he is an at-will employee, his continued employment is insufficient consideration. Dkt. No. 20 at 5; see also id. at 6. Plaintiff's "argument evidences a misunderstanding of the concept of consideration." Jackson v. Cintas Corp., 425 F.3d 1313, 1318 (11th Cir. 2005). "Under Georgia law, a mutual exchange of promises constitutes adequate consideration." Id. (citing Brown v. McGriff, 567 S.E.2d 374, 376 (Ga. Ct. App. 2002). Not only did AIG provide Plaintiff a job as consideration for his assent to the EDR plan, but AIG itself agreed to be bound by the same plan. See dkt. nos. 13-1 at 8-9, 13-5 at 11-12, 20-1 ¶ 4. Plaintiff's argument that the Agreement(s) lack consideration is meritless.

3. Whether Agreement(s) are Illusory Contracts

Plaintiff argues that "an agreement to arbitrate that can be rescinded or modified unilaterally by the employer at any time does not create a mutually enforceable, binding contract." Dkt. No. 20 at 5. It follows, argues Plaintiff, that "the provisions should be determined illusory and unenforceable." Id. at 6. Specifically, Plaintiff states that the 2008 Agreement allows AIG to amend it "'from time to time' without a provision for how the Plaintiff would be noticed." Id. at 11.

The illusory promises doctrine "instructs courts to avoid constructions of contracts that would render promises illusory because such promises cannot serve as consideration for a contract." M & G Polymers USA, LLC v. Tackett, -- U.S. --, 135 S. Ct. 926, 936 (2015). "It has long been the rule in Georgia that the test of mutuality is to be applied as of the time the contract is to be enforced." Jones v. Quigley, 315 S.E.2d 59, 60 (Ga. Ct. App. 1984). "If at that time the contract contains mutual obligations equally binding on both parties to the contract, then the contract is not unilateral and unenforceable." Id.

Plaintiff's argument that AIG is imposing an illusory, one-sided requirement to arbitrate, dkt. no. 20 at 4, is misguided. The 2008 Agreement—and the 2003 Agreement, for that matter—clearly states that both parties agree to participate in binding arbitration and waive their right to court action. Dkt. No. 13-

AO 72A
(Rev. 8/82)

1 at 9 (providing for "the parties' mutual agreement to submit to arbitration" and "waive any right either may have to seek redress in any court"); Dkt. No. 13-5 at 12 ("Both [AIG] and the Sales Employee are agreeing to resolve all disputes covered by the [EDR Plan]" and "waive their right to a trial in a judicial forum"). AIG is bound by the terms of the 2008 Agreement with regard to covered claims, and its promise to be bound is thus not illusory. Caley, 428 F.3d at 1374 (citing Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC, 379 F.3d 159, 174-75 (5th Cir. 2004) ("The fact that the company has the right to change the terms upon notice does not mean that the contract never bound it."); Blair v. Scott Specialty Gases, 283 F.3d 595, 604 (3d Cir. 2002) (noting that promise is not illusory where employer retained unilateral power to modify employee handbook but was required to provide notice before doing so)). Plaintiff acknowledges that the "Amendment of Agreement" provision states AIG "may amend or modify any part of this Agreement at any time *by notice in writing.*" Dkt. No. 20 at 11 (emphasis added). As Defendant points out, the brochure outlining the EDR program given to employees upon signing the revised 2008 Agreement states that AIG may change or discontinue the EDR program only by providing "30 days' prior notice." Dkt. No. 28 at 4 (quoting dkt. no. 13-7 at 4); dkt. no. 13 ¶ 10.

Plaintiff also makes other arguments that the Agreement is illusory. First, Plaintiff argues that the Agreement provides AIG unilateral authority to modify the terms of Plaintiff's *compensation* without providing notice. See dkt. no. 20 at 7. However, the compensation provision does not affect the parties' rights and obligations under the arbitration provision of the Agreement, and, therefore, does not make the Agreement illusory. Next, Plaintiff argues that because AIG carves out a right to pursue legal remedies to enjoin Plaintiff from violating a covenant not to solicit and/or induce, dkt. no. 20 at 8, the arbitration provision is rendered illusory. The Eleventh Circuit has recognized, however, that an arbitration agreement can carve out causes of action. See, e.g., U.S. Nutraceuticals, LLC v. Cyanotech Corp., 769 F.3d 1308, 1313 (11th Cir. 2014); see also Performance Unlimited v. Questar Publishers, 52 F.3d 1373, 1380 (6th Cir. 1995) (noting that "a district court has the authority to grant injunctive relief in an arbitrable dispute, provided that the traditional prerequisites for such relief are satisfied" (citing cases)). Plaintiff's argument that the EDR program is illusory fails.

4. The Scope of the Arbitration Provision

Plaintiff argues that the Applicant's Understandings and Authorizations, dkt. no. 13-3, which he signed on July 14, 2003, "does not set out specific employment claims and is . . . not

specific as to the federal statutory rights that the applicant is agreeing to arbitrate," and, therefore, it is ambiguous and cannot be enforced against him. See Dkt. No 20 at 9-10. Plaintiff's argument is meritless. The Understandings and Authorizations document expressly states that "[s]eeking or accepting employment with [AIG] means that I agree to resolve employment-related claims against the company or another employee through this process instead of through the courts" and that "**[n]o right of court action exists.**" Dkt. No. 13-3 (emphasis in original). His signature on the document acknowledges that "[t]he details of the EDR program, including any limitation or exclusions are furnished to each employee and are available to applicants upon request." Id. The EDR program itself specifically lists statutory claims, expressly including those brought by Plaintiff in this action, and states that disputes regarding legally protected rights are covered and must be resolved through arbitration. Dkt. Nos. 13-1 at 8, 13-5 at 11-12. At a minimum, any confusion on Plaintiff's part as to what claims are covered was rendered moot upon his receipt of the EDR program document two weeks later, on July 28, 2003, which he acknowledged via his signature. Dkt. No. 13-4.

5. Significance of At-Will Employment

Plaintiff argues that the documents submitted by AIG "merely set forth various changes in the terms and conditions of

AO 72A
(Rev. 8/82)

[Plaintiff's] employment and should not be considered enforceable contracts in an under at-will employment relationship." Dkt. No. 20 at 14. In other words, it appears Plaintiff is arguing that since the Agreements are invalid, so are the arbitration provisions within them.

There are two types of challenges to the validity of arbitration agreements. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 (2006). "One challenges specifically the agreement to arbitrate," and "[t]he other challenges the contract as a whole." Id. The former is an issue to be addressed by the courts, and the latter is to be addressed by an arbitrator. Id. at 445-46. Therefore, this argument is one for the arbitrator, and not the Court, to decide.

6. Significance of AIG's Participation in the Open Door Policy

Plaintiff recognizes that the EDR program "provides employees with a four-option process for resolving workplace disputes." Dkt. No. 20 at 12 (citing Dkt. No. 13-7 at 2). Under the "Open Door Policy," the employee has "the opportunity to raise any employment-related concern with whatever level of management in your unit or division is required to resolve the issue. . . . Employees, supervisors and managers must honor the integrity and spirit of the policy[.]" Dkt. No. 13-7 at 5.

Plaintiff argues that AIG failed to honor its obligations under the Open Door Policy, which demonstrates that agreement to arbitrate is illusory and unenforceable. Dkt. No. 20 at 13. Defendant responds that the Open Door Policy option is a voluntary step in the dispute resolution process, whereas the arbitration step, should a dispute get that far, is mandatory. Dkt. No. 28 at 8.

"[O]nce a court has determined that the parties have an agreement to arbitrate, 'procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide.'" Ga. Cas. & Sur. Co. v. Excalibur Reinsurance Corp., 4 F. Supp. 3d 1362, 1372 (N.D. Ga. 2014) (quoting Howsam v. Dean Witter Reynolds, Inc., 437 U.S. 79, 84 (2002)). "Procedural questions reserved for arbitrators include questions of standing, laches, res judicata, procedural timeliness, collateral estoppel, and equitable estoppel." Id. (citing Aluminum Brick & Glass Workers Int'l Union v. AAA Plumbing Pottery Corp., 991 F.2d 1545, 1550 (11th Cir.1993)). Similarly, "whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate" are procedural questions left to the arbitrator. Glass v. Kidder Peabody & Co., 114 F.3d 446, 453 (4th Cir. 1997) (citing

AO 72A
(Rev. 8/82)

John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964)). Accordingly, the Court finds Plaintiff's argument regarding whether Defendant participated in the Open Door Policy option under the EDR plan and what effect that has, if any, on the parties' duty to arbitrate is one that should be resolved by the arbitrator and not the Court.

The Court finds the arbitration provision of the 2008 Agreement enforceable. Because all of Plaintiff's claims are subject to arbitration, the Court exercises its discretion to dismiss the case without prejudice rather than stay proceedings. Perera v. H & R Block E. Enters., Inc., 914 F. Supp. 2d 1284, 1290 (S.D. Fla. 2012) (citing Caley v. Gulfstream Aerospace Corp., 333 F. Supp. 2d 1367, 1379 (N.D. Ga. 2004) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration."), aff'd 428 F.3d at 1379).

**CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss, dkt. no. 12, is **GRANTED** to the extent it seeks dismissal of this action. Accordingly, Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**. The Court **DENIES AS MOOT** Defendant's alternative motion for a stay of these proceedings. Plaintiff is compelled to submit his claims to arbitration.

AO 72A
(Rev. 8/82)

**SO ORDERED**, this 8TH day of August, 2016.

                                   _____
                                   LISA GODBEY WOOD, CHIEF JUDGE
                                   UNITED STATES DISTRICT COURT
                                   SOUTHERN DISTRICT OF GEORGIA